**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

COACH, INC. and COACH SERVICES, INC.,

      Plaintiffs,

    v.                                         Case No. 15-10740

SOURCE II, INC. and CERHUE ANDRE
WALKER, individually and d/b/a SOURCE II,
INC.,

      Defendants.

_____/

**OPINION AND ORDER AWARDING STATUTORY DAMAGES**

This is a counterfeit product case. Already proven is the gross and intentional theft-by-infringement of the intellectual property rights of the owners of world-famous trademarks. All that remains for the court is to calculate the money damages due the lawful owners of the property in question.

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach") brought this trademark infringement action to recover damages from Defendants Source II, Inc. and Cerhue Andre Walker, alleging that the Defendants offered for sale counterfeit Coach products. On September 13, 2016, the court granted in part Plaintiffs' Motion for Partial Summary Judgment as to Defendants' liability and denied Defendants' Motion for Summary Judgment. (Dkt. # 37.) In a subsequent informal status conference, Plaintiffs indicated to the court that they would be electing to recover statutory damages instead of actual damages as allowed under the Lanham Act, 15 U.S.C. § 1117(c), which provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services . . . .

In light of Plaintiffs' election, the court directed Plaintiffs to provide supplemental briefing addressing the statutory damages to which they believed they were entitled. (Dkt. # 39, Pg. ID 647.) In their brief, Plaintiffs request a finding that Defendants willfully infringed their marks, an award of $2,000,000, and a permanent injunction. (Dkt. # 40.) Defendants filed a response, (Dkt. # 43), to which Plaintiffs replied, (Dkt. # 45), and the court allowed Defendants a sur-reply (Dkt. # 47). The court has reviewed all the relevant briefing, and finds a hearing unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will determine that no additional fact-finding is necessary and will award Plaintiffs $300,000.

## I.  BACKGROUND[1]

Unless otherwise noted, the following facts are undisputed. Coach is a venerable American business that manufactures and sells fine leather products and other accessories. (Dkt. # 24, Pg. ID 184). Coach owns an extensive portfolio of well-known, easily recognized, and federally registered trademarks. (*Id.*) Coach has expended substantial resources developing, advertising, and otherwise promoting these marks. (*Id.*) As a result, consumers readily identify merchandise bearing Coach marks as being of high quality and originating with Coach. (*Id.*)

---

[1] The background section is largely a repetition of the court's earlier summary judgment order. (Dkt. # 37.)

Defendant Cerhue Andre Walker is the sole member and owner of Defendant Source II, Inc., which operates the clothing and accessory store, The Source Apparel. (Dkt. # 24, Pg. ID 192.) Defendants are not licensed or otherwise authorized to use Coach's marks. (Dkt. # 8, Pg. ID 55.)

Defendants' showroom, while simulating a legitimate business, was in fact a "front" for a hidden backroom where counterfeit apparel and accessories were displayed and offered for sale. (Dkt. #31-5, Pg. ID 544.) On December 4, 2014, law enforcement officials executed a search warrant at The Source Apparel and seized thousands of counterfeit handbags, wallets, and accessories worth approximately $1,671,040. (Dkt. # 23, Pg. ID 140; Dkt. # 24, Pg. ID 192-93.) Four counterfeit Coach purses were among the products seized. (Dkt. # 23-5, Pg. ID 164). James Schoenherr, a Coach investigator working with law enforcement examined the purses and concluded they were counterfeit. (Dkt. #23-1, Pg. ID 147-48.)

## II.  DISCUSSION

Thievery such as that proved in this case is a problem of apparently massive proportion.  "In 2002, American copyright based industries sustained more than $9 billion in losses" from counterfeiting and piracy. *See* International Anticounterfeiting Coalition*, White Paper: The Negative Consequences of Intellectual Property Theft: Economic Harm, Threats to the Public Health and Safety, and Links to Organized Crime and Terrorist Organizations* (January 2005), at 4.[2] The Act authorizes the court to award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark

---

[2] available at
http://cdm16064.contentdm.oclc.org/cdm/ref/collection/p266901coll4/id/3379 (last visited 2/1/2017).

per type of good[] . . . offered for sale . . . as the court considers just[,]" which increases to "not more than $2,000,000 per counterfeit mark per type of good" if the use of the counterfeit mark was "willful." *Id.* The language of the provision places the amount of the award squarely within the discretion of the court. *Id.* Defendants request a finding of willfulness, an award of $2,000,000, and a permanent injunction. (Dkt. # 40.)

## A.  The marks at issue

The unusual record in this case presents a threshold issue. The court has already found that Defendants are liable for trademark infringement. (Dkt. # 37.) Defendant Source II, by failing to respond to Plaintiffs' requests for admission, has been deemed to admit that it offered for sale products, including "handbags and a wallet," bearing counterfeits of registered Coach trademarks. (Dkt. # 27-6.) Defendant Walker, however, did respond to the requests, and has provided a sworn affidavit stating that "no Coach wallets were on display and/or for sale" at the time of the raid. (Dkt. # 23-7, Pg. ID 178.) The court has not yet addressed the wallet issue—the purses alone were sufficient to find that Defendants were liable and "the degree of Defendants' liability is a damages question that remains unresolved." (Dkt. # 39, Pg. ID 647.) However, the record lacks any evidence to show which and how many registered marks were on the purses.

In a second affidavit, attached to Defendants' sur-reply on statutory damages, Defendant Walker states that he believes the wallet "was found at Source II[] well prior to the December 4, 2014 seizure by the confidential informant when Source II re-located from its previous location at Snyder Sales and was part of an accumulation of old goods stored in a bin and which was moved to the Source II location." (Dkt. # 47, Pg. ID 744.)

Indeed, according to the warrant affidavit, a confidential informant purchased twenty-eight items from Source II's prior location, including a Coach wallet, on February 21, 2014. (Dkt. # 27-2, Pg. ID 265.) Per the warrant affidavit, James Schoenherr, as a representative of most of the brands, including Coach, inspected the items and determined they were all counterfeits on March 6, 2014. (*Id.* at Pg. ID 265.)

Schoenerr's report to Coach, dated shortly after the raid of Source II, indicates that he was contacted by law enforcement in February of 2014, and asked to assist with a "long term investigation" of a then-unidentified wholesale vender. (Dkt. # 24-2, Pg. ID 209.) The report states that during the investigation Schoenerr examined items purchased from the vender on, among other dates, February 21, 2014, and that all of the inspected items were counterfeit. (*Id.*) Schoenerr also explains that he was asked to go to Source II on the day of the raid and review items seized from Defendants' store that had been "on display and offered for sale[,]" including Coach products, and that "All Coach Logo apparel was determined to be counterfeit." (*Id.* at 209-210.) Directly below this line, without description, are two photos of the wallet at issue. (*Id.* at 210.) The report does not indicate whether the wallet was one of the products seized during the raid or whether it was the wallet purchased by the confidential informant in February of 2014. As Defendants have repeatedly pointed out, the wallet does not appear in the inventory of products seized in the raid. (Dkt. # 43-4.)

Even if Defendants theory is correct, Defendants sold the counterfeit Coach wallet to a confidential informant on February 6, 2014. This is still "use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services" for which Plaintiffs may recover statutory damages. 15 U.S.C. § 1117(c). As a result,

Defendant Walker is also liable for trademark infringement with respect to both the four purses and the wallet.

Defendants also aver that "Plaintiffs are required to specifically identify which marks have been infringed." (Dkt. # 43, Pg. ID 685.) In support, Defendants cite, without discussion, *Heckler & Koch, Inc. v. Coharie Arms., Inc.*, 2010 U.S. Dist. LEXIS 23460, at *4 (S.D. Ind., March 12, 2010) (holding that "although evidence of the registration number is essential to prevail, it is not essential at the pleading stage"). Notwithstanding Defendants' reliance on this unreported, out-of-circuit case, Defendants concede that the wallet, with its accompanying tag, bore at least two registered trademarks. (Dkt. # 47, Pg. ID 737 (stating that marks corresponding to U.S. Trademark Registration Nos. 2,626,565 and 1,309,779 "appear in the photographs").)

Defendants also acknowledge that Plaintiffs point out a third mark that does, in fact, appear on the wallet, though they argue that it does not appear in the chart listed in Plaintiffs' reply brief. (*Id.* (4,105,636).) Defendants do not explain why that would be relevant. Even if it were, the mark actually does appear in the chart in Plaintiffs' reply, (Dkt. # 45, Pg. ID 721), as well as in the complaint, (Dkt. # 1, Pg. ID 7), and Plaintiffs' partial summary judgment motion, (Dkt. # 24, Pg. ID 189). Thus, at least three valid, registered marks appear on the counterfeit wallet that Defendants either offered for sale or sold.

To the extent the court has already held that there is no genuine dispute that the purses bore at least one counterfeit Coach mark, (*see* Dkt. # 37, Pg. ID 613), *Heckler & Koch* does not address whether the court may presume that the purses represent an additional type of product for the purposes of the maximum allowable statutory

6

damages award. Because the court will settle on an award far less than the maximum allowed based only on the wallet, the court need not resolve the question.

### B.  Willfulness

Defendants argue that the only basis for a finding of willfulness is Defendant Source II, Inc.'s failure to respond to Plaintiffs' Request for Admission. (Dkt. # 43, Pg. ID 686.) The court firmly disagrees. Defendants' entire course of conduct here demonstrates willfulness. As the court found in its summary judgment order, undisputed evidence in the record shows that Defendants' superficially legitimate business was merely a front—Defendants' store concealed a hidden backroom where Defendants traded in counterfeits. At no point in this litigation have Defendants disputed the existence of or their involvement in this illicit enterprise. Defendants' willfulness is further evidenced by the scale of their illegitimate business—law enforcement seized over $1.5 million in counterfeit goods that Defendants had on hand at the time. The court can scarcely conceive of stronger evidenced of willful infringement than Defendants' underhanded efforts to illegally acquire, quietly transport, display out of easy sight in the "back room," and offer for sale what amounted to—literally—a small fortune in counterfeit goods.

Defendants again point to the affidavit of Defendant Walker, (Dkt. # 23-7), in which he denies that any Coach purses were "on display" and denies that any Coach wallets were "on display or offered for sale" on the day of the raid. (Dkt. # 43, Pg. ID 686-87.) As the court discussed in its summary judgment order, Defendant Walker's affidavit fails to contest that counterfeit Coach purses were "offered for sale." (Dkt. # 37, Pg. ID 613-14.) If anything, the fact that the purses were not visibly "on display" in the

area to which the public had ready access, but were uncontrovertedly offered for sale away from public view in Defendants' secret room is more indicative of willfulness. And as discussed above, Defendant Walker's alternative scenario in which he sold the counterfeit wallet to the confidential informant does not absolve him. Further, despite filing two separate affidavits, at no point does Defendant Walker contest evidence in the record that he directed this entire business.

The court finds beyond any degree of doubt that both Defendants acted willfully. As a result, Plaintiffs are entitled to statutory damages of not less than $1,000 and not more than $2,000,000 per mark per type of good sold. 15 U.S.C. § 1117(c)(2).

### C.  Award amount

Plaintiffs ask the court to award $2,000,000. (Dkt. # 40, Pg. ID 657.) In support, Plaintiffs point to a variety of cases in which other courts have granted seven-figure statutory damage awards. (*Id.*) But the cases Plaintiffs point to are substantially different from the record here. Most notably, they involve online stores with evidence showing sales of thousands of infringing products. *See, e.g.*, *Coach Inc. v. P-Ships & Uninc. Assoc's*, No. 14-cv-09924, Dkt. # 10, Pg. ID 104 (N.D. Ill. Oct. 19, 2016); *Coach Inc. v. Allen*, 2012 U.S. Dist. LEXIS 100829 (S.D.N.Y. July 18, 2012). Or they involve thousands of counterfeit Coach products, as opposed to five purses and one wallet. *E.g. Coach, Inc. v. Celco Customs Service Co.*, 11-cv-10787, Dkt. # 1, Pg. ID 9 (C.D. Cal. Mar. 28, 2013.) The court finds Plaintiffs' examples unhelpful to monetarily assess the more modest illegal marketing at issue here.

The Sixth Circuit has not adopted any particular formula or identified specific factors the court must consider. As Plaintiffs point out, other courts have borrowed the

factors identified in *Tiffany (NJ) Inc. v. Luban* for awarding statutory damages for copyright infringement. *See, e.g.*, *Coach, Inc. v. Pure MLK Last Stop, Inc.*, 2013 WL 5888139, *2 (C.D. Ill. Nov. 4, 2013) (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp.2d 123, 125 (S.D.N.Y. 2003)). These include: (1) expenses saved and profits reaped; (2) the revenue lost by Plaintiffs; (3) the value of the copyright or trademark; (4) the deterrent effect on others besides Defendants; (5) whether Defendant's conduct was innocent or willful; (6) whether Defendants cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging Defendants. *Luban*, 282 F. Supp.2d at 125 (citing *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117 (2nd Cir. 1986)). Defendants aver only that the court "is not required to follow any rigid formula[,] but enjoys wide discretion. (Dkt. # 43, Pg. ID 689 (citing *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991)).

Little in the record speaks to the first two factors. Defendants aver that the wallet at issue has not been sold by Plaintiffs for some time, and argue that this supports an inference that Plaintiffs lost little revenue. (Dkt. # 47, Pg. ID 739.) As to the third factor, the court has already found that Plaintiffs have "expended substantial resources developing, advertising, and otherwise promoting these marks." (Dkt. # 37, Pg. ID 609.) With respect to the fourth, generally the larger the award, the greater the deterrent effect on other counterfeiters. Beyond Defendant Source II's failure to respond to the requests for admission, the court is unaware of any particular refusals to cooperate in discovery.

The court finds that the most significant factors are Defendants' willfulness and the potential for discouraging Defendants. As explained—and emphasized—above, Defendants' conduct was unmistakably willful. Given the scale of Defendants' operation, the award must be sufficiently large that it cannot be viewed as a mere "cost of doing business." Defendants argue that "a permanent injunction would serve as sufficient deterrence from future conduct and an [sic] any award of damages would be redundant[,]" but the court cannot believe that a civil injunction, even if printed in large font on sturdy white paper, would succeed in deterring Defendants from future counterfeiting when actual criminal prohibitions have already failed.

Although the court does not know the exact number of counterfeit marks sold or offered for sale by Defendants, at least three marks appear on the wallet. The court finds that a total of $300,000—$100,000 per known mark—will appropriately compensate Plaintiffs, punish Defendants, and deter Defendants and others from willfully dealing in counterfeit products in the future. While on the high end for a "per mark" basis, the statute authorizes twice as much even in the absence of willfulness. Other courts have awarded similar amounts when the infringement was willful and the exact number of infringing products and marks could not be ascertained. *See, e.g.*, *Pure MLK Last Stop*, 2013 WL 5888139, at *3 (awarding $500,000 total, $100,000 per mark appearing on single handbag produced from seizure of many counterfeit products from the defendant's "large scale counterfeiting operation"). Further, the court notes that the $300,000 total is a small fraction of the $2,000,000 maximum the court is empowered by statute to award for willful violation of a single mark, and just 5 percent of the

$6,000,000 maximum authorized for Defendants willful sale or offering for sale of the wallet. 15 U.S.C. § 1117(c)(2).

Defendants' relentless focus on the wallet versus the purses and the amount awarded per mark misses the forest for the trees. The court is less concerned with the "per mark" amount than it is with the total—whether the wallet has two or five marks, or the purses each bore the same mark or many different ones, Defendants' willfulness and susceptibility to future deterrence remain the same. The court finds that the circumstances here call for a total award of $300,000, an amount far less than the maximum authorized by statute based on the wallet alone. *Cf. Coach, Inc. v. Brothers Gas & Mart, Inc.*, 2013 WL 1414435 (E.D. Mich. April 8, 2013) (Borman, J.) (awarding a total amount of $500,000 in statutory damages without discussing the amount awarded per mark).

The court has already ruled that Defendant Walker will be held individually liable for the Lanham Act claims. (Dkt. # 37, Pg. ID 616.) Defendants argue that the court must analyze the amount of damages to be awarded different with respect to each Defendant, as "Plaintiffs have not pierced the corporate veil to reach Walker personally." (Dkt. # 47, Pg. ID 736 n.1.) While Defendants are technically correct that Defendant Walker's liability is not based on piercing the corporate veil, Defendants are still jointly and severally liable for the infringement. *See Hair Assocs., Inc. v. Nat'l Hair Replacement Servs., Inc.*, 987 F. Supp. 569, 590-91 (W.D. Mich. 1997) ("Put simply, a corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation."). The three valid, registered marks, even without a finding a willfulness, sets the upper bound

11

on statutory damages at $600,000. 15 U.S.C. 1117(c)(1). As the court's award is well below even that limit, the court will not make separate findings. Defendants are jointly and severally liable for the entire $300,000 award.

### D.  Injunction

Plaintiffs also request the court issue a permanent injunction against Defendants. (Dkt. # 40, Pg. ID 662-63.) The Lanham Act authorizes courts to grant injunctions "under principles of equity and upon such terms as the court may deem reasonable" to prevent future infringement. 15 U.S.C. § 1116(a). Defendants do not contest the suitability of a permanent injunction in this case. (Dkt. # 47, Pg. ID 740 ("[A]ny harm incurred on [sic] Plaintiffs is so minor than an [sic] injunctive relief would sufficiently prevent any similar conduct in the future by either Defendant.").) Accordingly, the court will enjoin Defendants from ever again infringing on Coach trademarks.

### III.  CONCLUSION

For all the reasons discussed above, IT IS ORDERED that the court awards Plaintiffs statutory damages in the amount of $300,000 against Defendants, jointly and severally.

IT IS FURTHER ORDERED that Defendants Source II, Inc. and Cerhue Andre Walker are permanently ENJOINED AND PROHIBITED from using, displaying, selling, or offering for sale in any way a product that bears any actual or simulated Coach trademark.

IT IS FURTHER ORDERED that Plaintiff Coach may submit for the court's consideration alternate language to use in modifying the injunctive relief ordered herein.

Any such alternate language should be submitted within 21 days of this order.


                                            s/Robert H. Cleland                               /
                                            ROBERT H. CLELAND
                                            UNITED STATES DISTRICT JUDGE

Dated:  February 1, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 1, 2017, by electronic and/or ordinary mail.


                                            s/Shawna C. Burns                               /
                                            Case Manager Generalist
                                            (810) 984-2056


S:\Cleland\JUDGE'S DESK\C1 ORDERS\15-10740.COACH.Statutory.Damages.Finding.TLH.RHC.docx